**UNITED STATES of America,
Appellee,**

v.

**Robert W. LIVENGOOD, Appellant.**

**UNITED STATES of America,
Appellee,**

v.

**Donald D. ETHERTON, Appellant.**

**Nos. 23319, 23320.**

United States Court of Appeals,
Ninth Circuit.

April 6, 1970.

Rehearings Denied Aug. 4, 1970.

short business life, had raised $735,000 by public sale of these "Debentures"—essentially unsecured promissory notes.

The prosecution which gives rise to these appeals was commenced May 18, 1967. On that date an 18 count indictment was returned and filed in the United States District Court against Donald D. Etherton and Robert W. Livengood, two of Producers' officers and directors. They had publicly sold Debentures in respective amounts of $335,100 and $296,900. The indictment charged them jointly with fraud in the sale of securities (15 U.S.C. § 77q(a); mail fraud (18 U.S.C. § 1341), conspiracy (18 U.S.C. § 371) and making false statements (18 U.S.C. § 1001). Some counts were dismissed as to one or both defendants before the case went to the jury and, on others, they were acquitted; however, both defendants were found guilty on Counts 11, 12 and 15 (mail fraud) and Etherton was additionally found guilty on Counts 2 and 4 (securities fraud) and Count 10 (mail fraud).[1]

R. Max Etter and Horton Herman, Spokane, Wash., for appellants.

Smithmoore P. Myers, Asst. U. S. Atty., Dean C. Smith, U. S. Atty., Spokane, Wash., for appellee.

Before BARNES and KOELSCH, Circuit Judges, and * WILLIAMS, District Judge.

KOELSCH, Circuit Judge.

Producers Livestock and Loan Company, Inc. was ordered into receivership on January 7, 1966, shortly after defaulting in the redemption of the first series of its "8% Callable Debentures." It had been incorporated approximately five years before and, during its relatively

The district court entered judgments on the verdicts and imposed concurrent sentences for each offense on either defendant; Etherton received three years and Livengood two years. On their appeals Etherton and Livengood have filed separate briefs, but in the main they urge the same points for reversal of the judgments.

The prosecution was not barred by positive statutory prohibition, because the crimes were all allegedly committed within the applicable five year limitation period provided by 18 U.S.C. § 3282. Defendants nevertheless contend

---

* Honorable David W. Williams, United States District Judge, Los Angeles, California, sitting by designation.

1. Count 16 was the conspiracy count; it covered the period from November 2, 1962 to May 1967.

Counts 1 through 9 charged securities frauds, the earliest committed about July 23, 1962.

Counts 10 through 15 charged mail frauds on various dates during the period from May 6, 1963 through January 12, 1965.

Counts 17 and 18 charged false statements in September 1966.

Counts 17 and 18 were dismissed prior to trial and Counts 5 and 6 were dismissed as to Livengood during trial when it developed that he was not associated with Producers until after the dates of those alleged crimes. The earliest crime of which defendants were found guilty was the one charged in Count 11. It was committed about August 27, 1963.

that, because of "pre-prosecution" delay, the government should not have been permitted to press the charges. They rely indiscriminately upon the Speedy Trial Clause of the Sixth Amendment, the Due Process Clause of the Fifth and the supervisory power of federal courts to control criminal proceedings, as the basis for judicial interposition earlier than the time expressly limited by statute.

No useful purpose is served in the present context by an exposition of these Constitutional guarantees and the federal courts' inherent power. Suffice to say that two of the elements common to the application of any of them are undue governmental delay in initating or prosecuting charges against a person and prejudice occasioned him as a result of that delay. United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); Lucas v. United States, 363 F.2d 500 (9th Cir. 1966); Wilson v. United States, 409 F.2d 184 (9th Cir. 1969); Whitted v. United States, 411 F. 2d 107 (9th Cir. 1969). This record does not demonstrate the existence of either.

■ Defendants maintain that the period of delay dates from approximately mid 1963. They declare that the Securities and Exchange Commission had kept Producers under constant "surveillance" from May 9, 1961, when Producers secured the first of several sales permits from the State of Washington; that in this respect the S.E.C. had examined into Producers' financial structure, had investigated its business operations and had interviewed a considerable number of debenture holders about Producers sales methods. They also note that the S.E.C.'s concern over its findings led to an informal meeting late in 1963 between representatives of Producers, the S.E.C. and the Washington Licensing Department; that at the meeting the S.E.C., indicating a belief that Producers had not made required disclosures to and had withheld significant fiscal information from prospective purchasers, threatened Producers with injunctive action. And finally, they point out that many of the fraudulent representations set out in the indictment are of the same type as those discussed at the meeting.

Defendants argue that these facts clearly demonstrate that the government was fully aware of their alleged fraudulent practices for more than three years before securing the indictment and thus unduly delayed commencing the prosecution. They rely heavily upon United States v. Parrott, 248 F.Supp. 196 (D.C. D.C.1965). We find Parrott factually inapposite. The point of difference is that there the S.E.C. had made a formal criminal reference report to the United States Attorney some 22 months before prosecution was commenced. Here, the S.E.C. did not. Nor does the record show, as defendants suggest, an early awareness by the government of the defendants' wrongdoing. The meeting in 1963 at most reflects an attempt by the S.E.C. to assist Producers in avoiding mistakes which could lead to government intervention by civil proceedings. It is also noteworthy that during the meeting Producers' attorney made explanations concerning any purported fraudulent representation and gave assurances which he concluded satisfied the S.E.C. and that thereafter Producers had no further encounter with the government. The receivership in January 1966, was an event which logically might—and in fact did—prompt an official investigation of a failed business which had "gone public." We are not prepared to say the government should be faulted for making a thorough investigation before concluding that someone connected with a business the size of Producers had defrauded investors.

Appellants are not able to point to facts or circumstances showing or tending to show that they were substantially disadvantaged or that the proceedings were rendered unfair because of the time lapse between the defendants unlawful acts and the filing of the indictment, or the filing and the eventual trial. In short, there is no substantial proof during either period that any like-

ly witness became unavailable, that memories had dimmed, that evidence was lost, or that any other circumstance arose detrimental to defendants in making their defense.

The defendants had themselves made the sales and dealt with the investors. They evidenced little difficulty recalling most of the transactions and were able to give in considerable detail their versions of them; true, they could not recall some transactions, but as to them they nevertheless emphatically denied making any fraudulent misrepresentations, basing their denials upon the "general pattern" they assertedly followed in all sales. The fact is also significant that on all nine counts which charged the earliest crimes, the defendants were acquitted.

■ The charges of mail and securities fraud were couched in the language of the respective statutes and hence the indictment met the requirements of Rule 7(c) and was not defective; the alleged schemes were particularized in some detail, nevertheless the defendants were on notice that the government might adduce proof of other or additional fraudulent acts and omissions for the pleader was careful to preface the enumerations with a statement that the defendants' fraudulent acts and omissions "included, but were not limited to," those specifically alleged.

Although the offenses were such that they could be and were properly charged in the same indictment in separate counts pursuant to Rule 8(a) F.R.Cr.P. and similarly, although the defendants were jointly charged in each count with having participated in the same act or transaction constituting the alleged offenses and hence were properly joined together as parties defendant, as permitted by Rule 8(b), F.R.Cr.P., defendants, nevertheless, contend that in the circum-

stances of this case the district court abused its discretion in denying their motions to elect as to counts and to grant separate trials.

The record, however, reveals no unusual circumstances nor any degree of prejudice to either defendant sufficient to have required a favorable ruling of their motion. Defendants' argument is replete with hyperbole, but the hard fact remains that this case is merely one of many in which several defendants faced multiple counts.[2] Davenport v. United States, 260 F.2d 591 (9th Cir. 1958) reveals a situation much more worthy of favorable consideration than the one in this case but there too we upheld the district court's denial of relief.

■ The claim is made that since appellants were acquitted on the conspiracy count the verdicts against them on the several substantive counts were inconsistent. Appellants recognize the general rule in the federal courts that consistency between the several counts of an indictment or information is not necessary where a defendant is convicted upon one or some of the counts but acquitted on another or others and that the conviction will be sustained even though rationally incompatible with the acquittal. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). However, they argue that, because the conspiracy count involved the same overt acts as those comprising the substantive counts of which they were found guilty, the inconsistency is so gross as to require reversal. We should perhaps point out that an essential element of the conspiracy was not included in any of the substantive crimes of which appellants were convicted; but that fact aside, past decisions of this court unmistakably demonstrate a uniform application of the general rule to cases the same [Coplin v. United States,

2. For example, Livengood declares that "chaos and confusion [is reflected] in the jury's verdicts." This statement is belied by the verdicts themselves: There was proof that Livengood had no part in selling debentures between December 1963 and October 1965; the jury took due note and apparently accepted such to be the fact for it found Etherton guilty of several crimes charged in that period (Counts 2, 4 and 10), but acquitted Livengood of them.

88 F.2d 652, 661 (9th Cir. 1937) c. d., Thomas v. United States, 227 F.2d 667 (9th Cir. 1955) c. d.] or substantially similar to [Robinson v. United States, 175 F.2d 4 (9th Cir. 1949); Morrissey v. United States, 67 F.2d 267 (9th Cir. 1933)] the one at bar.

■ Defendants' attack on the sufficiency of the evidence to prove an intent to defraud borders on the frivolous.

Etherton and Livengood were not simply hired salesmen. Both were officers and directors of Producers and Etherton, in addition, was Producers largest shareholder. Yet, despite this intimate managerial relationship, they consistently made material misrepresentations to and failed to reveal or deliberately withheld information from investors concerning Producers' true financial condition. Surely, in this setting these acts and omissions afforded a basis for the jury's implied finding that the defendants intended to gull their unwary victims.[3]

■ Livengood's general complaint that the trial court erred in permitting evidence of defendants' actions during 1964 and 1965 also lacks merit. Not only was Etherton charged with (and in fact convicted of) the commission of two substantive offenses during the latter year, but both defendants were charged with, and there was considerable evidence tending to prove that they were cooperating together in, a scheme to defraud investors throughout that period. Moreover, although Livengood was not then in Producers' employ, nevertheless, there was evidence that during this interval he "boosted" Producers to one victim, took a leading role in creating support for Etherton as manager, and participated with the latter in attempting to "sell" the investors in a reorganization program after Producers failed to meet its obligations. Obviously, evidence of that kind was damaging and prejudicial, but it was relevant and hence not erroneously admitted.

The final point attacks separately each of the three mail fraud convictions (Count 11, 12 and 15). The contention is that in none was proof adduced tending to establish the essential element of use of the mails to perpetrate the alleged fraud.

We deem it unnecessary to examine into all these three convictions, because the record pertinent to the first is sufficient to sustain that conviction. Sinclair v. United States, 279 U.S. 263, 299, 49 S.Ct. 268, 73 L.Ed. 692 (1929).

Thus, the government adduced evidence that investor Bernard O. Kempf was solicited to purchase one of Producers' debentures by means of a brochure which the defendants caused to be mailed to him. Kempf's testimony was to the effect that late in August 1963, upon receiving the brochure, he had his wife fill out the attached stamped postcard and mail the same back to Producers; that during the morning of September 5, Livengood called and that after some discussion with Livengood, who gave them assurances that their investment would be safe, they purchased and paid for a $5,000 debenture later that same day. Clearly, the mailing of the brochure to Kempf implemented defendants' fraudulent scheme. It matters not that the brochure was free of misrepresentations. It paved the way for the eventual sale. Durland v. United States, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896).

The judgments are affirmed.

---

3. Livengood acknowledges the well settled rule that a jury's factual determination on conflicting evidence is conclusive, but points out that "where a fact situation is established that destroys the prosecutor's claim of illegal intent the jury is not free to assume its existence." We agree. But the evidence on which he relies "to destroy the prosecutor's claim" does not negate illegal intent as a matter of law.