UNITED STATES of America, Plaintiff-Appellee,

v.

Frank C. McLISTER, Defendant-Appellant.

No. 78–3077.

United States Court of Appeals, Ninth Circuit.

Nov. 21, 1979.

Richard B. Mazer, San Francisco, Cal., for defendant-appellant.

Floy E. Dawson, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before HUFSTEDLER and GOODWIN, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

A jury found Frank C. McLister guilty of distributing cocaine in violation of 21 U.S.C. § 841(a)(1) and acquitted him of conspiring to distribute cocaine in violation of 21 U.S.C. § 846.

## Factual Background

McLister and three codefendants, John Irwin, Sharon Baker, and Thane Rucker were arrested after participating in a transaction in which a pound of cocaine was sold to an undercover government agent.[1] McLister does not deny his participation or his knowledge that the sale involved cocaine. Rather, he contends that he lacked the requisite criminal intent.

The events leading to the arrests began in Denver, Colorado, where Irwin was arrested by the Denver Police Department in December, 1977, for possession of cocaine. In exchange for a dismissal of the criminal charge against him, Irwin agreed to become an informant for the Police Department. In February, 1978, Irwin met Darrell Wisdom, a Drug Enforcement Administration (DEA) agent, who was posing as a large scale drug dealer. Wisdom was aware of Irwin's status, but Irwin did not know that Wisdom was a DEA agent. In subsequent negotiations, Wisdom began to suspect that Irwin was "double dealing", i. e., acting as an informant and continuing to deal in the illegal distribution of drugs.

On March 6 Irwin told Wisdom that he had set up a transaction in San Francisco for the purchase of a pound or two of cocaine. Irwin and his girl friend, Sharon Baker, flew to San Francisco later that day, and Wisdom followed on March 7. After making final arrangements for the purchase of the cocaine, Wisdom met Irwin and Baker in the lobby of the Hilton Hotel. Shortly thereafter McLister and Rucker arrived in McLister's camper. After Wisdom entered the camper, Irwin and McLister produced the cocaine and gave it to Wisdom. Shortly thereafter, Wisdom and other agents arrested the four defendants.

At the trial Irwin testified that he had participated in the cocaine sale solely in furtherance of his plea agreement with the Denver Police and that he had intended to turn the participants over to the authorities. He claimed that McLister supplied the cocaine. On the other hand, McLister testified that prior to the transaction Irwin told him that he and Baker were acting as undercover agents for the Denver Police and that he reluctantly agreed to assist them in arranging for the arrest of a narcotics trafficker (Wisdom). McLister testified further that the cocaine he handed to Wisdom in the trailer belonged to either Irwin or Baker, who had placed it in the camper the night before with his permission.

## Contentions on Appeal

Appellant contends that the district court erred in (1) restricting appellant's cross-examination of his codefendant Irwin and Denver Police Detective Meyer; (2) permitting the prosecutor to cross-examine appellant concerning a misdemeanor conviction for possession of marijuana; and (3) instructing the jury that it would consider evidence that appellant had used cocaine; and (4) that the acquittal of appellant on the conspiracy charge was inconsistent with its verdict of guilty on the substantive charge.

## Inconsistent Verdicts

■ We find no merit in appellant's last contention that his acquittal on the conspiracy count precluded his conviction on the substantive count of distribution of cocaine.

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. The defendants were charged and tried jointly. Irwin and Baker were convicted of both conspiracy to distribute and distributing cocaine. Irwin's conviction is on appeal. Baker is a fugitive. Rucker was acquitted on both charges.

See, e. g., *United States v. Livengood*, 427 F.2d 420, 423 (9 Cir. 1970), where the jury acquitted the defendants on conspiracy charges to commit mail fraud, but convicted them on substantive counts of overt acts included in the conspiracy count. This court rejected the contention that a reversal was required and followed the general rule "that consistency between the several counts of an indictment or information is not necessary where a defendant is convicted upon one or some of the counts but acquitted on another or others and that the conviction will be sustained even though rationally incompatible with the acquittal." *Id.* at 423 (citing *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932)).

■ We conclude, however, that the combination of other alleged errors requires a reversal, even though each by itself might constitute harmless error.

### Cross-examination of Irwin and Meyer

The alleged errors in the cross-examination of codefendant Irwin and Gregory Meyer, a Denver Police Department detective, resulted in large part from the conflicting contentions of the defendants, i. e., Irwin and Baker claiming that McLister owned the cocaine, and McLister claiming that it was owned by Irwin or Baker, and that he was simply assisting them in arranging for the sale to a narcotics trafficker, assuming that Irwin and Baker were under-cover agents.

#### (a) Cross-examination of Meyer

Meyer, called as a witness by codefendant Baker, testified during direct examination that in February, 1978, he did not believe Irwin was double dealing in his negotiations with agent Wisdom, despite DEA conclusions to the contrary. On cross-examination Meyer was asked by counsel for McLister if he then believed Irwin had been double dealing. The court sustained the Government's objection that Meyer's opinion was irrelevant. In an offer of proof McLister claimed that Meyer would have testified that at the time of trial he believed Irwin had been double dealing, contrary to his previous opinion. Appellant argues that this testimony should have been permitted because it related to a subject raised on direct examination and supports his defense.

■ It is probably true, as the Government argues, that Meyer's answer might have "caused prejudicial harm to Irwin". We cannot agree, however, that it could not have benefited McLister. Meyer's testimony on direct examination might well have left the impression that at the time of trial, Meyer continued to believe that Irwin was not double dealing and his participation in the transaction was solely to assist the Denver police. This would affect McLister's defense, which in part required the jury to believe that Irwin was acting on his own and was the owner of the cocaine. To prevent a possible half truth, detrimental to appellant, it was proper and relevant for him to cross-examine detective Meyer on his current opinion on whether Irwin had been double dealing. See *United States v. Brady*, 561 F.2d 1319, 1320 (9 Cir. 1977). The question was directed specifically to testimony developed by Irwin and the trial court on direct examination. See *United States v. Alvarez-Lopez*, 559 F.2d 1155, 1158 (9 Cir. 1977).

#### (b) Cross-examination of Irwin

On April 4, 1978, Wisdom, without Irwin's knowledge, taped a telephone conversation in which Irwin admitted that he had been double dealing in San Francisco. Following a pretrial hearing the district court granted Irwin's motion to suppress this conversation, under *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

At trial the court refused to allow appellant to question Irwin concerning the April 4 conversation on the ground that the post-arrest conversation was irrelevant.[2] Appel-

---

**2.** Prior to trial McLister had moved to sever his trial from that of Irwin and Baker on the ground that their testimony was indispensible to his defense. The motion was denied. In light of the proof offered at the trial, the motion could properly have been granted.

lant argues that the conversation would have (1) shown Irwin's bias, prejudice and interest in naming the appellant as the source of the cocaine, (2) impeached Irwin's credibility, and (3) supported appellant's defense.

Irwin testified that he acted solely to further his plea agreement with the Denver police, and that McLister had furnished the cocaine. It was necessary to appellant's defense that the jury find that Irwin had been double dealing and also that appellant had assumed that Irwin was acting as an undercover agent. Appellant had a right to impeach Irwin's credibility. The evidence was relevant and might have been helpful to appellant's defense. The fact that Irwin was not called as a witness by the Government is immaterial. See *United States v. Dixon*, 547 F.2d 1079, 1084 (9 Cir. 1976).

The Government argues that any error in refusing to permit appellant to examine Irwin was, in any event, harmless error. It is true that in finding Irwin guilty of both conspiracy and distribution, the jury must have believed that he was double dealing. It is difficult, however, to determine what effect, if any, this testimony would have had upon appellant's defense. If this were the only error, we might well conclude that it was harmless in view of other evidence of McLister's guilt. As noted *supra*, however, we conclude that combined with other errors, reversal is required.[3]

### Prior Marijuana Conviction

The district court, over objection, permitted the Government to cross-examine McLister with regard to a misdemeanor conviction nine years earlier involving possession of one cigarette. As the Government notes in its brief, the evidence was offered as a "misdemeanor conviction involving moral turpitude" under Rule 609(a), Federal Rules of Evidence. The court, however, did not accept the evidence under that theory and later instructed the jury that the conviction could be considered

"only in the light of the characterization of . . . [appellant's] life style as one that might normally have been expected to exclude the use of such substances".

### (a) Admissibility under Rule 609(a)

Rule 609(a), Federal Rules of Evidence provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

The marijuana conviction was not punishable by "imprisonment in excess of one year" and did not involve "dishonesty or false statement". It therefore could not be used to impeach credibility. See, *e. g., United States v. Ortega*, 561 F.2d 803 (9 Cir. 1977); *United States v. Thompson*, 559 F.2d 552 (9 Cir. 1977).

### (b) Admissibility under Rule 404

Rule 404 relating to "character evidence" provides in 404(a) that:

> Evidence of a person's character . . . is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except [when] . . . offered by an accused, or by the prosecutor to rebut the same . . . .

A defendant may offer testimony "that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged". *Michelson v. United States*, 335 U.S. 469, 476, 69 S.Ct. 213, 219, 93 L.Ed. 168 (1948). Such testimony is limited to opin-

---

3. Having found possible prejudice, we need not consider whether the restriction of appellant's right to cross-examination was of constitutional dimensions. See *United States v. Brady, supra*, 561 F.2d at 1320.

ions with respect to the defendant's general reputation in the community. When the defendant offers testimony tending to prove his good reputation, the Government may introduce contradictory evidence. *Id.* 476, 69 S.Ct. 213 *et seq.*

Appellant's counsel in his opening statement told the jury that McLister was engaged in the antique business, had purchased property in Colorado and intended to go into the hydroponics business, and came from "what may be called a relatively privileged background", with no need to get into any illegal business. McLister testified regarding his property interests and his intention of going into the hydroponics business. The Government argues that it had the right under Rule 404(b)[4] to impeach McLister's credibility and to show "his knowledge of illicit drugs".

We cannot find that either counsel's opening statement or McLister's own testimony placed his general character in issue under Rule 404(a) or under the rules set forth in *Michelson v. United States, supra.* See *United States v. Tomaiolo*, 249 F.2d 683, 689 (2 Cir. 1957). Nor did appellant request any jury instruction indicating that he intended to place his character in issue. The trial judge specifically instructed the jury that the marijuana conviction was to be used "only in the light of the characterization of . . . [appellant's] life style . . . ". There is no suggestion that the court intended that the evidence could be considered for any of the purposes, including knowledge, set forth in Rule 404(b).[5]

Assuming, *arguendo*, that the appellant's character was placed in issue or that Rule 404(b) is applicable, any relevance the marijuana conviction might have is outweighed by its prejudicial effect. Rule 403[6] and Rule 609, Fed.R. of Evid., require balancing of the probative value of the evidence against its prejudicial effect. A misdemeanor marijuana conviction nine years before the indictment has little probative value to impeach credibility or to prove any of the purposes listed in Rule 404(b), but its prejudicial effect could be significant.

The Government argues that any error in admitting the evidence was harmless beyond a reasonable doubt—that evidence of a minor marijuana conviction nine years ago could not be deemed unfairly prejudicial. If this were the only error, we might agree, but again we must consider the potential effect of the series of errors in the Government's proof.

### Instruction on Cocaine Use

Irwin testified that the night before the San Francisco arrests, he, Baker, McLister, Rucker and four others were at appellant's home. Someone produced cocaine for "socializing", which he ingested to satisfy himself that it was cocaine and not a substitute. He denied knowing who brought the cocaine out. Appellant denied having used it.

**4.** Rule 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**5.** The Government's reliance upon *United States v. Batts*, 573 F.2d 599 (9 Cir.), *cert. denied*, 439 U.S. 859, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978), is misplaced. *Batts* is distinguishable on two grounds: (1) Batts, charged with distribution of hashish, claimed lack of knowledge of cocaine, the uses of a coke spoon, and the existence of hashish in his vehicle. Evidence that he had recently participated in a cocaine sale was held admissible under Rule 404(b), to show "knowledge". Here McLister admitted "knowledge" of the cocaine. (2) In holding that the relevant factor was the type of activity undertaken rather than the identity of the drug, we held in *Batts* that the "connecting factor" was that both the prior act and the current offense involved an intent to *distribute* an illegal drug. Here the conviction for possession of one marijuana cigarette nine years before trial bears little similarity to the current charge of distributing cocaine.

**6.** Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." While Rule 404(b) is an "inclusionary rule", it is subject to the balancing test of Rule 403. The trial judge must perform this balancing. *E. g., United States v. Sangrey*, 586 F.2d 1312, 1314 (9 Cir. 1978).

The court instructed the jury that "there was some testimony that he [appellant] had used cocaine at his home in the presence of the persons who were said to be there." Appellant objected, claiming that no evidence in the record indicated that he had used the cocaine. The court then reinstructed the jury as follows:

THE COURT: I think I said to you that there was evidence that McLister might have ingested some cocaine at his house on the evening of the purported party.

You will recall what the evidence was on that point. I have. It's been suggested that there was no specific evidence dealing with Mr. McLister and it may well be that the evidence was solely that some other person or persons had done it and there was no evidence with respect to Mr. McLister. So I withdraw that. If you do think that the state of the evidence was such as to indicate that McLister did ingest any cocaine on that evening, then consider that only for the limited purpose that I indicated to you.

But I do not state unequivocally that that is what the evidence said, but it might be that it is possible for you to make that, draw that conclusion from the evidence.

Appellant contends that the jury could not permissibly infer from the evidence in the record that he had used cocaine on the night prior to his arrest. He argues that the trial judge's instruction that the jury might draw this conclusion inserted a false issue in the case, and was, therefore error.

 It is of course well established that an instruction should not be given if it lacks evidentiary support or is based upon mere suspicion or speculation. See, e. g., *United States v. Thomas*, 453 F.2d 141, 143 (9 Cir. 1971), *cert. denied* 405 U.S. 1069, 92 S.Ct. 1516, 31 L.Ed.2d 801 (1978); *United States v. Waskow*, 519 F.2d 1345, 1347 (8 Cir. 1975). Here Irwin testified that someone produced a small amount of cocaine for "socializing" at McLister's home and that he had a conversation with McLister about the cocaine before it was passed around.

There is no evidence, however, that McLister used the cocaine.

The Government argues that even though the record "does not specifically reflect that McLister used any of this cocaine", it is reasonable to infer that he used and furnished it; that the erroneous instruction was corrected; and that in any event, it was harmless error in the context of this case.

While a close question is presented, we conclude that the instruction was improper in view of the absence of any evidence that McLister used the cocaine. If this were the only error, we would hold it harmless. As noted *supra*, however, we are forced to the conclusion that the combined errors were prejudicial and require a reversal. See *United States v. Ortega, supra*.

Reversed and remanded for new trial.