**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Luis Albert GILLESPIE,**
**Defendant–Appellant.**

**No. 87–5067.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 14, 1988.

Decided July 22, 1988.

---

**477**

Charles R. Breyer, Coblentz, Cahen, McCabe & Breyer, San Francisco, Cal., for defendant-appellant.

Steven E. Zipperstein, Asst. U.S. Atty., Crim. Div., Los Angeles, Cal., for plaintiff-appellee.

Before KOELSCH and LEAVY, Circuit Judges, and BRYAN,[*] District Judge.

LEAVY, Circuit Judge:

Luis Albert Gillespie appeals his conviction by a jury of causing the transportation of a person in interstate and foreign commerce for illegal sexual purposes (18 U.S.C. §§ 2(b), 2421 (1987)) and of directly and indirectly importing an alien for immoral purposes (8 U.S.C. § 1328 (1982)).

The government's case was based primarily on the testimony of Isabel Anderson, who testified she saw the appellant with his pants down rubbing himself against his three-year-old goddaughter while she lay on a bed with her underwear off and her nightgown drawn up. Anderson also testified that, a few weeks earlier, she saw blood on the child's underwear after she had been with the appellant a few hours. Anderson further testified that David Gillespie, the appellant's adoptive father, used a false birth certificate to obtain an Ecuadorian court decree granting him custody of the child and a visa to bring her to the United States. At trial, the appellant denied that he ever abused the child.

On appeal, the appellant contends the trial court abused its discretion in 1) admitting evidence from which the jury could infer that he and David Gillespie had a homosexual relationship; 2) admitting expert testimony on characteristics common to child molesters; and 3) admitting evidence concerning anatomically correct dolls without qualifying it under the test in *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923) (*Frye* test). We find these contentions meritorious. Moreover, the trial court's errors were not harmless.

The conviction is reversed and the case remanded for a new trial.

## FACTS AND PROCEEDINGS

In 1983 the appellant, a native of Ecuador, traveled from the United States to Ecuador to visit his family. In Ecuador, he agreed to act as godfather to a one-year-old girl. Later in 1983 David Gillespie, a single male age 54, obtained a California decree of adoption, adopting the appellant, a male of 32 then separated from his wife.

In 1984, the appellant and David Gillespie visited Ecuador and decided to bring the little girl back to Los Angeles. Using a false birth record, David Gillespie obtained an Ecuadorian court decree granting him custody of the child. He flew her to Honduras and left her with Isabel Anderson, a Canadian nanny he had hired. Pursuant to David Gillespie's instructions, Anderson used the false birth record and the Ecuadorian custody decree to obtain a United States visa for the child from the American authorities in Honduras.

Anderson and the child flew to New York, met David Gillespie, and then flew to Chicago for the wedding of David Gillespie's sister. The appellant flew from Los Angeles to Chicago on the same day, arriving at approximately 7:15 p.m. David Gillespie, the child, and the appellant had dinner at David Gillespie's sister's house and returned to their hotel sometime after 10:00 p.m. At trial, Anderson testified she

[*] The Honorable Robert J. Bryan, United States District Judge for the Western District of Washington, sitting by designation.

saw blood on the child's underwear that night.

Anderson also testified that one night approximately four weeks after the Gillespies returned from the Chicago wedding to Los Angeles, she saw the appellant sexually molesting the child. The appellant testified that he never abused the child.

A Dr. Higgins testified the child suffered vaginal trauma consistent with sexual abuse but he could not determine how recently or by what means the abuse had been inflicted. The child's therapist testified the child's behavior with anatomically correct dolls showed she had been molested by an adult male using his penis and not by a woman. The appellant does not dispute that the child was sexually abused, but suggests the abuse occurred in Ecuador or when Anderson performed an unauthorized vaginal examination.

The government filed an indictment charging the appellant with violation of 18 U.S.C. §§ 2 and 2421 and 8 U.S.C. § 1328. He was convicted on both counts after a four week jury trial.

## DISCUSSION

### I. *Evidence of Homosexuality*

The appellant contends the trial court abused its discretion by admitting various witnesses' testimony indicating he and David Gillespie had a homosexual relationship. The appellant's contention has merit.[1]

We review admission of evidence for abuse of discretion. *United States v. Rubio*, 727 F.2d 786, 798 (9th Cir.1983); *United States v. Gwaltney*, 790 F.2d 1378, 1382–83 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987). District court errors are subject to the harmless error rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Anderson and other prosecution witnesses testified the appellant slept with his adoptive father. The government contends the evidence was admissible because the defense raised the issue of homosexuality in its opening statement. Alternatively, the government contends it did not present that testimony to prove the appellant, as a homosexual, was more likely to sexually abuse a child, but offered it under Federal Rule of Evidence 404(b) to show the appellant's motive, intent, plan, and design for bringing the child to the United States. The government argues that evidence of the sleeping arrangements in the Gillespie household shows the appellant invented the facade of a father-son relationship to cover up his incestuous lifestyle, and that he intended to extend that facade to the child in order to cover up his true, illicit purpose for bringing her to the country.

We reject the government's arguments and hold it was error to admit evidence from which the jury could infer the Gillespies had a homosexual relationship. The defense did not raise the issue of homosexuality. Rather, the defense moved in limine that the trial court exclude evidence of homosexuality. The trial court did not rule on the motion until the jury selection was completed. During opening argument, the government told the jury the appellant and David Gillespie slept in the same bed. The first evidence of homosexuality was presented during the government's case in chief when it asked Anderson about the sleeping arrangements in the household. In examining the defense's opening statement, we cannot conclude that the defense raised the issue of homosexuality.

Nor can admission of the evidence be justified under Rule 404(b). The evidence neither proved nor disproved that the appellant molested the child. It was offered to show that the men differed from what they held themselves out to be, but none of the testimony about their sexual relationship helped the trier of fact decide whether the appellant was guilty of the offense

---

1. Because we conclude evidence of the Gillespies' sexual relationship was inadmissible, we need not reach the appellant's contention that the trial court erred in failing to ask his proposed voir dire question concerning homosexuality.

charged.[2]

Evidence of homosexuality is extremely prejudicial. *Cohn v. Papke,* 655 F.2d 191, 194 (9th Cir.1981) (introduction of evidence of homosexuality creates a "clear potential that the jury may have been unfairly influenced by whatever biases and stereotypes they might hold with regard to homosexuals"); *United States v. Birrell,* 421 F.2d 665, 666 (9th Cir.1970) (conviction for theft reversed because trial court admitted evidence of homosexuality). Moreover, the testimony here was not elicited as the by-product of neutral cross-examination on legitimate issues. Rather, the government repeatedly asked, over defense objections, pointed questions about the Gillespies' sleeping arrangements.

The government's argument that admission of the evidence of homosexuality was harmless because the trial court gave a limiting instruction is unconvincing. This case is centered around the appellant's denial of Anderson's eyewitness testimony. The verdict probably depended on the jury's assessment of the credibility and character of the appellant and Anderson. Under these circumstances the trial court's curative instruction to the jury was not sufficient to obviate the prejudice. Therefore, the admission of evidence of homosexuality was not harmless error.

## II. *Evidence of Characteristics of a Child Molester*

The appellant contends the district court erred in admitting the testimony of clinical psychologist Dr. Maloney on characteristics common to child molesters. The appellant contends he did not put his general charac-

ter at issue and did not assert his character was such that he could not sexually abuse a child. He argues that under such circumstances Dr. Maloney's testimony was irrelevant except for the unpermitted purpose of showing he had a propensity to molest the child because his background matched that of a typical child molester.

Generally, we review the trial court's admission of evidence for abuse of discretion. *United States v. Hernandez–Cuartas,* 717 F.2d 552, 554–55 (9th Cir. 1983). Rule 404(a)(1) provides:

Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except.... [e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same.

Fed.R.Evid. 404(a)(1).

A defendant puts his character at issue when he offers testimony as to honesty or his good reputation. *Michelson v. United States,* 335 U.S. 469, 479, 483–84, 69 S.Ct. 213, 220, 222, 93 L.Ed. 168 (1948). In *Michelson,* the court held that the defendant in a trial for bribery put his general character at issue when he called five witnesses who testified that he had a good reputation and was honest, truthful, and law abiding. *Id.* at 483–84, 69 S.Ct. at 222. Testimony limited to the defendant's background, however, is not sufficient to put the defendant's general character at issue. *See United States v. McLister,* 608 F.2d 785, 790 (9th Cir.1979). In *McLister,* the court held that the defendant did not put his general character at issue in his drug trial when his counsel told the jury the

---

**2.** The government relies on various cases where evidence of sexual activity was admitted under Rule 404(b) to show motive, intent, plan, or design. However, the evidence of sexual activity in those cases was relevant because it related directly to the victim or was the same type of sexual activity that the defendant allegedly performed with the victim. *See, e.g., United States v. Bradshaw,* 690 F.2d 704, 709 (9th Cir.1982), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983) (evidence of sexual and drug activity admissible motive evidence in kidnapping case to show defendant intended to perform same sexual acts with victim); *United*

*States v. Potter,* 616 F.2d 384, 387–89 (9th Cir. 1979), *cert. denied,* 449 U.S. 832, 101 S.Ct. 101, 66 L.Ed.2d 37 (1980) (evidence of sexual relations with patients admissible on motive and intent issues in prosecution of doctor for unlawfully prescribing drugs in return for sexual favors); *Umbaugh v. Hutto,* 486 F.2d 904, 906–07 (8th Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1978, 40 L.Ed.2d 311 (1974) (testimony of witness to rape by defendant admissible on intent and motive issues in prosecution of defendant for kidnapping a different victim for purpose of committing a rape).

defendant was well-off, from a privileged background, had no need to enter into an illegal business, and intended to go into a legitimate business. *Id.*

■ The government called Dr. Maloney allegedly to rebut what it termed the appellant's testimony he could not have molested the child. Dr. Maloney testified that the characteristics of a molester include an early disruption in the family environment, often with one parent missing: a relationship with the parent of the opposite sex who is dominant; unsuccessful relationships with women; a poor self-concept; and general instability in the background.

The trial court's admission of the testimony was an abuse of discretion. Neither the appellant, his witnesses, nor his lawyer put his general character at issue or testified he had any specific character traits that rendered him incapable of molesting a female child. The appellant's testimony as to his childhood was general background information, which did not put his character at issue. *See McLister,* 608 F.2d at 789.

We have stated in dictum that testimony of criminal profiles is highly undesirable as substantive evidence because it is of low probativity and inherently prejudicial. *See Hernandez,* 717 F.2d at 554–55 (testimony of the profile of a drug courier ordinarily inadmissible as substantive evidence of guilt). The jury's perception of the appellant's character and credibility are crucial to the outcome of this case; therefore, admission of Dr. Maloney's testimony was not harmless error.

### III. *Testimony Concerning Anatomically Correct Dolls*

The appellant contends that the district court erred in admitting testimony of Mary Lou Conner, the child's therapist, without qualifying it as reliable under *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923). The therapist testified that, in her opinion, the child's behavior with anatomically correct dolls showed she had been abused by a man using his penis and not by a woman. Conner's testimony was offered by the government to rebut the defense's theory

that Anderson rather than the appellant abused the child. The appellant argues that the scientific reliability of the use of anatomically correct dolls to diagnose sexually molested children should have been established in accordance with the *Frye* test in order to qualify Dr. Conner's testimony. The appellant's argument has merit.

The *Frye* test requires that when expert opinion based on a "scientific principle or discovery" is proffered, "the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." *Frye,* 293 F. at 1014. Evidence that does not qualify under *Frye* must be excluded because, "[t]he prejudicial effect of an aura of scientific respectability outweigh[s] the slight probative value of the evidence." *United States v. Solomon,* 753 F.2d 1522, 1526 (9th Cir.1985).

■ The trial court has wide discretion in determining whether particular scientific tests are reliable enough to permit expert testimony based upon their results. *Gwaltney,* 790 F.2d at 1382. The trial court's decision will be upheld unless manifestly erroneous. *Id.* However, the proponent of scientific evidence that has yet to gain general judicial recognition "has the burden of laying a proper foundation showing the underlying scientific basis and reliability of the expert's testimony." *Id.* (citations omitted).

We apply the *Frye* test to expert opinion testimony that is "based on a novel scientific technique." *See, e.g., Solomon,* 753 F.2d at 1526 (evidence based on the "novel scientific technique" of narco-analysis is admissible if it is "generally accepted as a reliable technique among the scientific community"); *Gwaltney,* 790 F.2d at 1381–82 (*Frye* test applied to expert opinion testimony based on the existence of antigens in semen and the fact that such antigens occur in only 5% of the population).

We have not previously ruled on the specific question of whether expert opinion testimony based on play therapy with anatomically correct dolls is subject to the

*Frye* test. However, we find persuasive the reasoning of *In re Amber B.*, 191 Cal. App.3d 682, 236 Cal.Rptr. 623 (1987), that expert opinion testimony based on play therapy with anatomically correct dolls must qualify under the *Frye* test because the trier of fact would tend to ascribe a high degree of certainty to the technique. *See also In re Christine C.*, 191 Cal.App.3d 676, 236 Cal.Rptr. 630 (1987) (trial court erred by admitting expert opinion testimony based on child's behavior with anatomically correct dolls).

■ The court's ruling during the course of the trial that Conner's testimony was admissible as non-scientific expert opinion, which did not need to qualify under the *Frye* test,[3] was manifestly erroneous. The testimony concerning anatomically correct dolls was crucial because it directly rebutted the defense's theory that Anderson rather than the appellant might have abused the child. The testimony was made before the jury by a witness who stated that she was an expert by virtue of both her academic credentials and her clinical experience. Therefore, lack of evidence as to the scientific reliability of this technique was not harmless error.[4]

## IV. *Government's Emphasis on the Gillespies' Wealth.*

■ The appellant contends the trial court erred in permitting the prosecutor to emphasize the Gillespies' wealth. This contention is without merit.

This case could not have been tried without some reference to the Gillespies' wealth. Defense counsel in opening statement told the jury, "Let me talk to you about David Gillespie. This man's richer than any man that I've ever known, I think. You'll hear evidence about how he flies around the world, has a jet, a home in Hancock Park, has an island off of Victoria, a hotel in Honduras." In fact, the defense went so far as to introduce into evidence the provisions of David Gillespie's will. The prosecutor made several improper references to a "bought defense" in closing argument; however, the defense's objection to those remarks was sustained.

## V. *Brady Violations*

The appellant contends the prosecution committed misconduct justifying reversal under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by withholding information as to which date Anderson would testify she saw the appellant abuse the child. He also contends the prosecution committed *Brady* error by allowing Anderson to give false testimony as to the date the appellant arrived in Chicago for the wedding of David Gillespie's sister. These contentions also lack merit.

■ We review an alleged *Brady* violation de novo. *United States v. Lehman,* 792 F.2d 899, 901 (9th Cir.), *cert. denied,* 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986). *Brady* violations require reversal if there is reasonable probability that the suppressed or false evidence affected the verdict. *United States v. Bagley,* 473 U.S. 667, 679 & n. 9, 682, 105 S.Ct. 3375, 3382 & n. 9 3383, 87 L.Ed.2d 481 (1985).

We find no *Brady* error. Moreover, the defense is now sufficiently familiar with

3. The trial court stated in its order denying the defendant's motion for a new trial that Conner's testimony was admissible as lay opinion pursuant to Federal Rule of Evidence 701. However, Conner testified before the jury that she was an expert in family counseling and in treatment of abused children using play therapy with anatomically correct dolls. Also, she testified before the jury that her conclusion the child had been molested by a male and not by a female was based on her professional experience with abused children and anatomically correct dolls. Therefore, Conner's testimony as received by the jury cannot be characterized as lay opinion under Rule 701. Moreover, while Conner's testimony as to her observations of the child's actions with the dolls might be characterized as lay opinion, Conner's conclusions as to the meaning of the child's actions cannot be admitted as lay opinion because they do not meet Rule 701(b)'s requirement of being helpful to the jury: the jury could have drawn its own conclusions based on Conner's testimony as to what the child did with the dolls.

4. Because we rule that the trial court erred in admitting Conner's testimony without qualifying it under *Frye*, we do not reach the appellant's contention that Conner's testimony was inadmissible hearsay.

**482**

any alleged *Brady* material to obviate any problem with it on retrial.

## CONCLUSION

The trial court erred in admitting evidence the appellant and David Gillespie had a homosexual relationship, admitting expert testimony on characteristics common to child molesters, and failing to subject the evidence concerning anatomically correct dolls to the *Frye* test. Accordingly, the appellant's conviction is reversed, and this case is remanded for a new trial consistent with this opinion.