UNITED STATES of America,
Plaintiff-Appellee,

v.

Dale Duane MINYARD, Defendant-
Appellant.

No. 71-2228.

United States Court of Appeals,
Ninth Circuit.

June 7, 1972.

Rehearing Denied July 14, 1972.

Charles F. Moses (argued), Robert L. Stephens, Jr., of Sandall, Moses & Cavan, Billings, Mont., for defendant-appellant.

Keith L. Burrowes, Asst. U. S. Atty. (argued), Otis L. Packwood, U. S. Atty., Billings, Mont., for plaintiff-appellee.

Before HAMLEY, BROWNING and WRIGHT, Circuit Judges.

HAMLEY, Circuit Judge:

Dale Duane Minyard appeals from his conviction on eight counts[1] of a seventeen-count indictment charging that, on various dates in June and July, 1969, he obtained by fraud, from the individual named in each count, money which was the subject of a grant or contract of assistance pursuant to the Economic Opportunity Program, in violation of 42 U.S.C. § 2703. Two-year concurrent sentences were imposed.

In the summer of 1969 an encampment for citizenship program was inaugurated for the Great Falls, Montana area. This contemplated taking eleven children from the poverty level and making arrangements for five of them to go to an encampment in New York, five to an encampment in Kentucky, and one to an encampment in Puerto Rico. It was decided that the tuition, and the expenses of board and room would be paid, one half by the United Scholarship Fund, and the other half by the Encampment for Citizenship group. It was also decided that one half of the children's transportation expenses would be paid by the United Scholarship Fund, and the remaining expenses would be paid by the children.

It was not possible for these children to pay for the other expenses to be incurred in connection with the project. It was therefore decided to place the eleven children on the summer work program and to have the children utilize their wages so earned to pay such costs. Time cards were made out in advance and signed by each of the participants in the program. The wages they earned, and the funds to be given the children as noted above, were turned over to Minyard for use in effectuating the described program. He was then the Director of the Neighborhood Youth Corps, part of Opportunities, Incorporated, a Montana corporation which received financial assistance and grants under the federal Economic Opportunity Program.

Minyard placed these funds in his personal bank account. He did not utilize all of these funds for payment of expenses, nor did he turn back to the eleven children all of the funds he did not expend for expenses. As to each child, Minyard claimed that he had paid the child's air fare from the money turned over to him whereas, in fact, all air fares were paid for entirely by United Scholarship Services of Denver, Colorado. Minyard did not make an accounting to each of these children and only made those he did make months after the return of the children to the Great Falls area, and then only after Minyard had been interviewed concerning the transaction by the Federal Bureau of Investigation. He did not have, in his personal account, sufficient money to pay all that was still due to someone other than himself.

On this appeal, Minyard calls attention to what he believes are the essential elements of criminal fraud, and seems to argue that the evidence is insufficient to support a verdict of guilty of fraud under the eight counts in question. We have examined the record and are convinced that the evidence is sufficient. While the instruction given on the question of fraud could have been more explicit, we think it was sufficient for the purpose of the relatively simple transactions in question.

■ Minyard argues that the evidence as to embezzlement was not sufficient and that no proper instruction was given on embezzlement. The short answer is that in all but two of the eight

---

1. Counts one, two, five, six, seven, nine, fifteen and sixteen.

counts under which Minyard was convicted no charge of embezzlement was involved and that in the remaining two (fifteenth and sixteenth counts) the reference to "misapplication of funds" is used in the conjunctive with the fraud charge. Thus, even as to these two counts, all the Government had to prove was fraud.

■ Minyard contends that the trial court erred in rejecting defendant's offer to prove by witness Robert M. Hardaway, that defendant's course of conduct negatived intent to defraud.

The offer of proof concerning Hardaway should have been accepted if this witness could have provided material evidence pertaining to Minyard's intent in connection with these transactions. But Hardaway's testimony would have pertained to an unrelated loan transaction in February, 1967, more than two years prior to the transactions dealt with in the indictment. Such testimony, as the trial court correctly ruled, would have been irrelevant.

Finally, Minyard argues that after count seventeen of the indictment was dismissed at the close of the Government's evidence, the trial court erroneously failed to withdraw from the jury the evidence pertaining to that count, and erroneously failed to provide the jury with any standards or guidelines as to the appropriate use it could make of this evidence.

The circumstances surrounding the charge embraced in count seventeen dealt with an alleged fraud, and wilful and knowing embezzlement of funds in the amount of $1,341.00 paid by Dr. Winfield S. Wilder to Minyard while the latter was employed as Director of the Neighborhood Youth Corps. At the close of the Government's case the trial court dismissed this count on the ground that the money thus obtained by Min-

yard did not come from the Government, but from Dr. Wilder. The court advised counsel, in the absence of the jury, that the evidence pertaining to count seventeen would not be stricken as it was relevant on the matter of the general intent with which Minyard withheld money involved in the other counts.

When the jury returned, the trial court advised them that count seventeen had been dismissed; that they were not to draw any inferences one way or the other from that fact; and that the evidence pertaining to count seventeen may be considered by the jury "if under the instructions you find that relevant to some other issues in the case." Counsel for Minyard then objected to the failure to strike this evidence, and to the court's instruction that the jury could apply such evidence to the other counts if they deemed it relevant "without any standards or any guidelines with which they can be governed in their consideration of this evidence as it applies to the other counts."

The trial court did not, at this point in the trial, provide the jury with any such standards or guidelines. However, in the course of its general instructions at the close of the case, the court stated: "In deciding the question of intent as it arises in connection with each count, you may consider all of the evidence in the whole case." After the trial court completed its instructions to the jury, counsel for defendant interposed no objection pertaining to the matter of standards or guidelines for consideration of evidence pertaining to count seventeen.

■ The circumstances surrounding the charge embraced in count seventeen dealt with the same general course of conduct, during the same period of time, and required the same specific intent on the part of defendant as in the case of the other counts on which defendant was convicted.[2] In our opinion, the trial

---

2. It is true that count seventeen did not involve the Encampment for Citizenship, with which the counts upon which convictions were obtained, were concerned. But it did involve a transaction, during this same general period, with Opportunities, Incorporated or the Neighborhood Youth Corps, with which defendant was attached, and concerned an effort to gain employment through that agency, for the

court therefore correctly ruled that the evidence pertaining to count seventeen was admissible independently of that count, as bearing upon the general intent with which Minyard engaged in the transactions involved in the other counts on which he was convicted. *See* Metheany v. United States, 390 F.2d 559, 562–563 (9th Cir. 1968); Baker v. United States, 310 F.2d 924, 928–929 (9th Cir. 1962).

However, defendant advances a further argument concerning the evidence pertaining to count seventeen which must also be considered. Other than the quotation of the trial court's ruling and counsel's objection thereto, this argument, unsupported by any citation of authority, consists of two sentences, reading as follows:

"Finally, the court did not in its statement give any standards or guidelines by which the jury could be guided as to how and in what manner they could consider this testimony and for what use it could be made as to show motive, knowledge, intent or course of conduct or anything else that the court might feel it was proper to retain in the case. Since the jury was not advised in this respect we also think this was prejudicial." [3]

It is the general rule that where evidence pertaining to another crime is introduced for the purpose of showing the general intent of defendant in committing the offense charged, the jury should be instructed as to the limited probative effect of the testimony admitted. *Baker, supra,* at 929; Tedesco

v. United States, 118 F.2d 737, 740 (9th Cir. 1941). The question remains, however, as to whether the failure to give such an instruction under the circumstances of this case constituted prejudicial error. Under Rule 52(a), Federal Rules of Criminal Procedure, any error, defect, irregularity or variance which does not affect substantial rights "shall be disregarded."

As explained above, opposite footnote reference 2, count seventeen relates to a transaction closely associated with the transactions dealt with in the counts which led to convictions. This being true, there was little likelihood that the evidence pertaining to count seventeen would establish in the jury's mind that defendant was a "bad man" because he was guilty of another unrelated crime.[4] Moreover, while the trial court failed to give a requested explicit instruction as to the appropriate use the jury could make of the evidence pertaining to count seventeen, the court did instruct, as stated above, that: "In deciding the question of intent as it arises in connection with each count, you may consider all of the evidence in the whole case." Defendant's failure to object to the sufficiency of this instruction tends to indicate that he was then content with it, or at least reasonably led the trial court to so conclude.

We accordingly hold that the failure to give an explicit instruction of the kind requested by defendant at the close of the Government's case did not affect defendant's substantial rights and is therefore harmless error.

Affirmed.

---

daughter of the man who paid to defendant the $1,341.00 referred to in that count.

3. It is fair to state that, in its brief on on appeal, the Government was equally unhelpful with regard to this question, making no response whatever to this contention by defendant.

4. In this respect this case differs from *Baker, supra,* where the charge was the knowing transportation of a female from Tiller, Oregon to Elko, Nevada for immoral purposes, and the evidence as to the other crime concerned a subsequent and wholly-unrelated incident which occurred at Peoria, Illinois.