United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 6, 2004**

Charles R. Fulbruge III
Clerk

**Revised**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-10829

_____

UNITED STATES OF AMERICA

Plaintiff-Appellee

versus

WILLIAM STEPHEN SOLESBEE

Defendant-Appellant

_____

Appeal from the United States District Court for

the Northern District of Texas

(No. 3:01-CR-027-R)

_____

Before DeMOSS, DENNIS, and PRADO, Circuit Judges.

DENNIS, Circuit Judge:[*]

William Stephen Solesbee appeals his conviction for two counts

of bankruptcy fraud, eight counts of wire fraud, one count of money

laundering, and one count of bank fraud, all based on a jury

verdict. We REVERSE the conviction for bank fraud and AFFIRM the

others.

---

[*] Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

**BACKGROUND**

On January 24, 2001, the grand jury returned an indictment charging Solesbee with one count of bankruptcy fraud in violation of 18 U.S.C. § 157; one count of transferring and concealing assets from the bankruptcy court, trustee, and creditors in violation of 18 U.S.C. § 1952(7); eight counts of wire fraud in violation of 18 U.S.C. § 1343; one count of bank fraud in violation of 18 U.S.C. § 1344; and two counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(I). The court dismissed one money laundering count during trial upon the government's motion, and the jury found Solesbee guilty of the remaining counts.

**Count 1** (Bankruptcy Fraud)

As to Count 1, the indictment charges the following. In May 1995, Solesbee negotiated the purchase of a residence in Dallas Texas and represented to the seller that the purchaser of the property was the Galloway Special Trust ("Trust"). Solesbee claimed that he was the trustee and primary beneficiary of the trust. Solesbee provided the seller with a financial statement for the trust knowing that it contained materially false and fraudulent information concerning trust assets and liabilities.

Based on the materially false and fraudulent representations made by Solesbee, the seller sold the residence to the Trust along

2

with some personal property. Under the terms of the sale, the Trust was required to make monthly payments of approximately $4,700 in principal, interest, and property taxes. The Trust defaulted on the first four monthly payments, and the seller gave notice of default and posted the residence for foreclosure. Prior to the date noticed for foreclosure, Solesbee transferred the residence from the Trust to himself individually for no consideration. Solesbee then filed Chapter 13 bankruptcy in the Bankruptcy Court for the Northern District of Texas, Dallas Divison, *In re William S. Solesbee*, No. 395-35447-SAF-13, to prevent foreclosure of the residence as well as collection actions by other creditors through operation of the bankruptcy automatic stay provision. Solesbee knowingly and intentionally omitted information from his bankruptcy filing concerning his creditors because disclosure of those amounts would have made him ineligible for chapter 13.

Thus, the indictment charges that Solesbee intentionally devised a scheme and artifice to defraud the seller, and for such purpose knowingly filed a bankruptcy petition, preventing the recovery of the residence while Solesbee claimed the protection of the automatic stay provisions to avoid making payments. Also, Solesbee filed documents in a bankruptcy proceeding containing materially false statements, all in violation of 18 U.S.C. § 157. The jury charge adequately instructed the jury as to the alleged offense, and the jury found Solesbee guilty on Count 1.

3

**Counts 2-6** (Wire Fraud)

As to Counts 2-6, the indictment charged the following. From in or about January 1996 until July 1996, Solesbee devised and intended to devise a scheme and artifice to defraud commercial airlines and hotels of their right to payment for airline tickets and hotel accommodations vouchers. Solesbee began a travel agency, Imperial Tours, which he operated from his personal residence. He also incorporated President's Travel, Inc., a Texas corporation that conducted business as Imperial Tours.

Solesbee planned and promoted a meeting to be held at the Aloha Bowl in Hawaii called Mission Meeting '96 ("MM96"). MM96 was held July 26-31, 1996, and was attended by missionaries and children of missionaries ("missionary kids" or "MKs") from all over the United States. Travel arrangements for MM96 attendees were required to be made exclusively through Imperial Tours.

Around March 1, 1996, Solesbee moved his operation for Imperial Tours into the Bonaventure Travel Agency in Dallas and began using Bonaventure's Airline Reporting Corporation account ("ARC account") at NationsBank in Dallas to pay for airline tickets issued by Imperial Tours. On or about April 2, 1996, Solesbee set up a new ARC account under the name of Bonaventure at NationsBank. The ARC functions as a clearinghouse for travel agencies and

4

airlines. Travel agencies are required to maintain a bonded AR account from which ARC debits the travel agency's receipts to pay the airlines for airline tickets that have been issued by the travel agency and used for travel and for vouchers issued by the travel agency and used to obtain hotel accommodations. Receipts from the sale of airline tickets and hotel accommodations by a travel agency are required to be deposited into the ARC account for this purpose.

Solesbee caused payments for airline tickets issued to persons planning to attend MM96 to be collected. He caused those individuals to pay for the tickets by credit card charges payable to Answer USA, an answering service controlled and operated by Solesbee. When the payments were received by Answer USA on the credit card charges, Solesbee caused the wire transfer of funds in Answer USA's acccount at MBNA America Bank in Wilmington, Delaware to the account of President's Travel, Inc., d.b.a. Imperial Tours account at NationsBank in Dallas, Texas, instead of the Bonaventure ARC account at NationsBank. Solesbee also caused the wire transfer of payments from purchaser bank accounts to the President's Travel, Inc., d.b.a. Imperial Tours account at NationsBank, in Dallas, Texas rather than to the ARC account. Solesbee then caused payments from the Imperial Tours account to be made to his personal creditors, thereby diverting funds from the ARC account and

5

defrauding the airlines of payment for tickets and hotel vouchers which had been issued in connection with MM96. The indictment then lists a number of these specific transfers, all made in violation of 18 U.S.C. §1343. The jury charge adequately instructed the jury as to the alleged offenses, and the jury found Solesbee guilty on Counts 2-6.

**Count 7** (Bankruptcy Fraud)

As to Count 7, the indictment charged the following. Solesbee owned and controlled Stephens Communications, Inc. ("SCI"), a Texas corporation that operated telephone answering services under the names "Answer USA" and "Cascade Communications." Around September 10, 1997, Solesbee caused the filing of a petition for voluntary Chapter 11 bankruptcy for SCI in the U.S. Bankruptcy Court in the Northern District of Texas, Dallas Division, *In re Stephens Communications, Inc.*, Case No. 397-38422-HCA-11. Solesbee signed the voluntary petition as President of SCI. The bankruptcy case was subsequently converted to a chapter 7 proceeding by order of the Bankruptcy Court, and Jeff Mims was appointed as trustee. At all times pertinent to this indictment, the bankruptcy case was a case under Title 11 of the United States Code.

Around October 11, 1997, Solesbee, with intent to defeat the provisions of Title 11, did knowingly and fraudulently transfer and conceal and caused to be transferred and concealed from the

bankruptcy court, trustee and creditors, certain property of the bankruptcy estate, that being Cadcom answering service equipment (previously purchased from Cascade) transferred to Answer Bay Area for the sale price of $15,000. Solesbee concealed the fraudulent transfer of the assets by failing to disclose this transfer to the court and the trustee and by making the transfer without seeking approval of the bankruptcy court in violation of 18 U.S.C. §152(7). The jury charge adequately instructed the jury as to the alleged offenses, and the jury found Solesbee guilty on Count 7.

**Counts 8-9** (Money Laundering)

As to Counts 8 and 9, the indictment charged the following. The grand jury incorporated the allegations of Count 7. Further, at all times pertinent to the indictment, Solesbee controlled Answer USA Georgia, a Georgia corporation. Solesbee knowingly and willfully conducted and attempted to conduct financial transactions affecting interstate commerce that involved the proceeds of a specified unlawful activity: bankruptcy fraud in violation of 18 U.S.C. § 152(7), knowing that the financial transactions were designed in whole or in part to conceal and disguise the nature, source, ownership, and control of the proceeds of said specified unlawful activity. The indictment noted a 10/16/97 deposit of a cashier's check of $11,250 drawn on the Answer Bay Area, Inc. Account at Central Bank of Tampa, Florida to the account of Answer

7

USA of Georgia at NationsBank in Atlanta, Georgia, which was partial payment for the purchase of Cadcom equipment belonging to the bankruptcy estate of SCI. The indictment also noted a 10/20/97 wire transfer of $3,000 between the same accounts as partial payment for the Cadcom equipment belonging to the bankruptcy estate of SCI. All these acts were taken in violation of 18 U.S.C. § 1956(a)(1)(B)(I). The district court dismissed Count 9 upon the governments motion. Whether or not the indictment sufficiently instructed the jury as to Count 8 is a topic of discussion below. The jury found Solesbee guilty on Count 8.

**Count 10** (Wire Fraud)

As to count 10, the indictment charged as follows. Around April 1997 through September 1997, Solesbee devised and intended to devise a scheme and artifice to defraud Sylvian Green of funds and property. Solesbee persuaded Green to invest her money in his business, Stephens Communications, Inc. ("SCI") and to loan money to SCI. Solesbee represented to Green that she would receive a high rate of return on her investment and that the return of her investment would be guaranteed by him personally. Solesbee made material false representations to Green concerning SCI to persuade her to provide him with funds when he was in fact obtaining the funds for his own personal use. As part of this scheme, Solesbee caused a wire transfer of $30,000 to be transmitted from Green's

8

account at Union Planters Bank in Crystal Springs, Mississippi to the account of SCI at NationsBank in Dallas, Texas, in violation of 18 U.S.C. §1343. The jury charge adequately instructed the jury as to the alleged offense, and the jury found Solesbee guilty on Count 10.

**Count 11** (Bank Fraud)

As to count 11, the indictment charged Solesbee with knowingly executing and attempting to execute a scheme and artifice to defraud Bank One, a federally-insured financial institution. The indictment charged that Solesbee caused check number 1122, drawn on the account of SCI d.b.a. V.I.P. Answering Service at Bank One, to be drawn payable to the City of Dallas in the amount of $7,644.27, for property taxes on his residence, when Solesbee knew the account had previously been closed for lack of funds in violation of 18 U.S.C. §1344. The jury charge adequately instructed the jury as to the alleged offense, and the jury found Solesbee guilty on Count 11.

**Counts 12-13** (Wire Fraud)

As to counts 12 and 13, the indictment alleged the following. From around May 27, 1998 until around January 30, 1999, Solesbee devised and intended to devise a scheme and artifice to defraud Wade Sommer of funds and property. Solesbee persuaded Sommer to

9

invest $30,000 in a Florida corporation named Sommer Communications. In exchange, Sommer was to own fifty percent of the company, with the remaining fifty percent owned by a trust of which Solesbee was the beneficiary. Sommer Communications was to operate "Lasting Impressions,"an answering service business in Tallahassee, Florida. Solesbee was to operate "Custom Communications," an answering service business in Fort Myers, Florida, which was purchased by Answer USA of Georgia.

To persuade Sommer to invest his money, Solesbee made false representations to Sommer. Solesbee represented to Sommer that Solesbee's prior answering service business, Answer USA of Georgia, had been debt free when in fact it owed more than $150,000 to its creditors. Solesbee also represented to Sommer that he needed a cashier's check for $4,500 payable to Robert J. Fordham for the purchase of answering service equipment when the money was actually to repay Fordham for a previous loan. Along these lines, Solesbee caused a $20,000 wire transfer to be made from Sommer's account at Bank of America in Dallas, Texas, to Sommer's account at First Union Bank in Tallahassee, Florida. Solesbee also caused a $10,000 wire transfer to be made from Sommer's account at Bank of America in Dallas, Texas, to the account of Lasting Impressions at First Bank of Tallahasse in Tallahassee, Florida, all in violation of 18 U.S.C. § 1343. The jury charge adequately instructed the jury as to

10

the alleged offenses, and the jury found Solesbee guilty on Counts 12 and 13.

**Sentencing**

The district court judge signed a judgment referencing the jury's findings of guilt and pronounced a sentence of 60 months each on Counts 1 through 7, 10, 12, and 13; the judge pronounced a sentence of 97 months each on Counts 8 and 11, the sentences on all counts to run concurrently. The judge also imposed a restitution obligation of $857,332 to be distributed among several of Solesbee's victims, but the court did not impose any fine and announced that the restitution obligation will not carry any interest. The court further ordered a five year period of supervised release and a $100 per count special assessment, totaling $1,200. Solesbee timely appealed.

**ISSUES**

Solesbee raises several issues on appeal.

1. Solesbee argues that the district court should have given the jury an instruction to disregard and should have declared a mistrial based on testimony by a government witness that implied Solesbee's sexual orientation to the jury.

2. Solesbee argues that the district court improperly admitted

evidence of "extrinsic transactions."

3.  Solesbee argues that the evidence is insufficient to sustain his conviction as to Counts 1, 2, 4, 8, 10, 11, 12, and 13.

4.  Solesbee argues that the district court erred in charging the jury on Count 8 that the underlying activity for the charged money laundering was wire fraud instead of bankruptcy fraud, thus constructively amending the indictment.

5.  Solesbee argues that the district court erred by considering his conviction as to Count 8 in sentencing because venue for Count 8 was not proper in the Northern District of Texas.

6.  Solesbee argues that the district court erred in ordering Solesbee to pay restitution to three persons who Solesbee argues were not harmed by any offense of which Solesbee was convicted.

7.  Solesbee argues that the district court erred in using certain loss figures in analyzing the sentencing guidelines.

We will address each of Solesbee's claims in turn.

### ANALYSIS

**1.  Whether this court should reverse based on the district court's refusal to give an instruction to disregard or grant a mistrial because of testimony by a government witness that communicated Solesbee's sexual orientation to the jury**

Ms. Parks, a witness for the government, was a former employee

of Solesbee who also happened to live in Solesbee's apartment complex. Ms. Parks eventually quit her job and moved out of the apartment. During the government's direct examination of Ms. Parks, the following exchange took place.

Q: Did you move out first or did you quit your job first?

A: I moved out first.

Q: Why did you move out?

A: Well, I was awakened in the middle of the night with banging on my wall. And the next morning I found out that he brought this guy home that he met at a bar.

Solesbee's Attorney: Objection, Your Honor. May I approach the bench?

The Court: Yes.

Solesbee's Attorney: Your Honor, it's obvious to me that they are trying to go into some kind of homosexual incident. They can't do that. I don't see what that has to do with anything in the trial other than prejudicial to Mr. Solesbee.

The Court: I don't see.

Government Attorney: I'm trying to show that he is not who he is portrayed to everyone. He is portrayed to everyone that he is a genuine missionary kid when, in fact, he's not.

The Court: Well, I'm going to sustain the objection.

Government Attorney: Okay.

(Open Court)

Solesbee's Attorney: Your Honor, may I have an instruction for the jury to disregard?

The Court: I've sustained the objection to that question.

13

> Solesbee's Attorney: Move for a mistrial, Your Honor.
>
> The Court: I'm sorry?
>
> Solesbee's Attorney: Move for a mistrial, Your Honor.
>
> The Court: That's denied.

Solesbee argues that the district court's refusal to give an instruction to disregard and declare a mistrial violated Federal Rules of Evidence ("FRE") 403 and 404. Along these lines, Solesbee also argues that the evidence was so prejudicial that its erroneous admission rendered the trial fundamentally unfair, thus violating his right to due process.

Evidentiary rulings are reviewed for an abuse of discretion. *United States v. Coleman*, 997 F.2d 1101, 1104 (5th Cir. 1993). The grant or denial of a mistrial is also reviewed under an abuse of discretion standard. *United States v. Willis*, 6 F.3d 257, 263. Further, the harmless error rule dictates that any error that does not affect the defendant's substantial rights must be disregarded. FED. R. CRIM. PROC. 52(a).

FRE 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to show action in conformity therewith." Initially, the district court judge did not admit the evidence in question; thus, the court did not violate FRE 404. Further, no one has argued that Solesbee's sexual orientation in any way indicates that he is more or less likely to defraud others. Thus, there is

14

not a colorable argument that this testimony coupled with the judge's refusal to give an instruction to disregard or to grant a mistrial violates FRE 404.

FRE 403 provides that evidence should be excluded if its probative value is substantially outweighed by a danger of unfair prejudice. Courts have recognized that evidence of a defendant's homosexuality is prejudicial and should be excluded in many situations. *See, e.g., People of Territory of Guam v. Shymanovitz*, 157 F.3d 1154, 1160 (9th Cir. Guam 1998) (concluding that admitting contents of gay magazines "served only the highly improper and offensive purpose of advising the jury that [defendant] was probably homosexual"); *United States v. Gillespie*, 852 F.2d 475, 479 (9th Cir. 1988) ("evidence of homosexuality is extremely prejudicial").

But the district court judge here did exclude the proffered evidence. The cases Solesbee cites in support of his argument for reversal are inapposite. They involve cases in which the district court admitted evidence regarding the defendant's homosexuality and cases in which the jury was much more likely to make an improper inference of guilt based on evidence of the defendant's homosexuality. *See Shymanovitz*, 157 F.3d 1154 (reversing conviction of criminal sexual assault involving children because district court admitted evidence of sexually-explicit gay magazines); *Gillespie*, 852 F.2d 475 (reversing conviction for

15

transportation of a person in interstate commerce for illegal sexual purposes because the district court admitted evidence of defendant's homosexuality); *United States v. Ham*, 998 F.2d 1247 (4th Cir. 1993) (district court allowed two days of evidence regarding charges of child molestation within the defendants' Hare Krishna community and testimony on defendant's homosexual relationship); *United States v. Provoo*, 215 F.2d 531 (2nd Cir. 1954) (district court allowed irrelevant testimony regarding defendant's alleged homosexuality; the government attempted to justify it as relevant to credibility); *United States v. Birrell*, 421 F.2d 665 (9th Cir. 1970) (per curiam) (district court refused to grant mistrial in conviction for auto theft after government counsel, in closing, argued that defendant should be in jail "where he belongs" instead of being turned "loose on society" because he "will be a homosexual and a car thief ... for the rest of his life").

Again, in this case the district court sustained Solesbee's objection to the testimony in question. The court also instructed the jury in its charge that the jury should only consider evidence admitted in trial and should not speculate about matters not in evidence. Additionally, substantial evidence of Solebee's guilt was admitted throughout the course of the trial. There is no reason to believe that the jury found Solesbee guilty on multiple counts of fraud based on one vague reference to his homosexuality. Thus, there was no reason for the district court to declare a

16

mistrial.

While an instruction to disregard may have been warranted here, the failure to give one was not an abuse of discretion. The court sustained Solesbee's objection to the proferred testimony. The court also instructed the jury only to consider admitted evidence, and there was ample evidence indicating Solesbee's guilt. Thus, far from rendering the trial "fundamentally unfair" as Solesbee contends, the district court's failure to give an instruction to disregard this one vague reference to Solesbee's homosexuality was harmless and thus does not require reversal.

**2.    Whether this court should reverse based on Solesbee's argument that the district court improperly admitted evidence of "extrinsic transactions"**

Solesbee next argues that the district court improperly admitted evidence of extrinsic transactions not alleged in the indictment. As noted above, FRE 404(b) states that evidence of other crimes, wrongs, or acts is not admissible to show action in conformity therewith. The rule goes on to state that such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED R. EVID. 404(b).

Extrinsic evidence is properly admitted under FRE 404(b) only if: 1) it is relevant to an issue other than the defendant's

character, and 2) its probative value is not substantially outweighed by its undue prejudice. *United States v. Leahy*, 82 F.3d 6724, 636 (5th Cir. 1996) (citing *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc)). Again, evidentiary rulings are reviewed for an abuse of discretion. *Coleman*, 997 F.2d at 1104.

Solesbee complains about the admission of testimony from 21 different witnesses. Unfortunately, Solesbee does not offer specific explanations as to why each portion of the complained-of testimony was improper; he just argues generally that none of them fit within the FRE 404(b) exceptions. A review of the complained-of testimony reveals that a significant portion of it was actually relevant to the charged offenses. Several of the witnesses had loaned money to Solesbee prior to his filing bankruptcy in September 1995, had not been paid back, and were not listed as creditors, thus indicating that the bankruptcy petition was simply filed to delay losing the home in Dallas, as detailed in the facts relevant to Count 1, and not for the purpose of providing debt relief. Solesbee complains of the admission of IRS records indicating that the Galloway Special Trust did not file tax returns from 1992 to 2000; but this evidence helps establish that the documents provided in relation to the purchase of the home in Count 1 were fraudulent. Some of the other complained-of witnesses had loaned money to Answer USA of Georgia that had not been repaid; this information was relevant to Solesbee's misleading of Sommer as

18

to the financial situation of Answer USA of Georgia, as outlined in the facts relevant to Counts 12 and 13.

The rest of the complained-of testimony was relevant to show Solesbee's intent. Evidence of similar extrinsic offenses is relevant to show intent. *See Leahy*, 82 F.3d at 636-36 (holding that evidence that the defendants had previously submitted false invoices to an air force base and a naval air station was relevant to show that they had the requisite intent to defraud the VA); *United States v. Osum*, 943 F.2d 1394, 1404 (5th Cir. 1991) (allowing evidence of extrinsic offenses because they are relevant based on "the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses").

At trial, Solesbee argued that he did not try to defraud anyone but that he was simply a bad businessman. In his opening statement, Solesbee's attorney argued:

> Stephen Solesbee, I believe the evidence will show, was a legitimate businessman, not a very successful one I'll admit, but a legitimate businessman. He wasn't defrauding anyone.... [H]e couldn't organize a Sunday School picnic. He didn't have the ability. You've seen it. He's not busting out answering services. He doesn't know how to run them.

Thus, Solesbee's defense placed the focus on whether or not Solesbee had the requisite intent for the charged offenses.

Much of the complained-of testimony related to house purchases and telecommunication company schemes similar to those employed by

Solesbee in the charged offenses. Additionally, in its charge to the jury, the district court instructed the jury that Solesbee "is not on trial for any act, conduct, or offense not alleged in the Indictment. The fact that [Solesbee] may have been accused of any other offense may not be considered by you for any purpose." In closing, the prosecutor argued that the jury could consider the evidence of other offenses for the "limited purpose" of showing that Solesbee "had the intent to commit the crimes that are charged in the indictment." Solesbee objected to that argument as being contrary to the court's charge, and the court overruled that objection. Thus, the jury was aware that it could not consider the evidence of these other acts for any purpose other than considering how they beared on Solesbee's intent. The admission of the evidence of these other acts was not an abuse of discretion and does not require reversal.

**3. Whether the evidence is insufficient to sustain his conviction as to Counts 1, 2, 4, 8, 10, 11, 12, and 13**

Solesbee argues that the evidence is insufficient to sustain his conviction as to Counts 1 (bankruptcy fraud), 2 (wire fraud), 4 (wire fraud), 8 (money laundering), 10 (wire fraud), 11 (bank fraud), and 12-13 (both wire fraud). As to an insufficiency of the evidence claim, the inquiry for this court is whether the evidence, viewed in the light most favorable to the verdict, would permit a reasonable juror to find guilt beyond a reasonable doubt. *United*

20

*States v. Guerrero*, 169 F.3d 933, 939 (5th Cir. 1999).

As to Solesbee's conviction for bank fraud under Count 11, Solesbee argues, and the government concedes, that proof of federal insurance of Bank One is an essential element to the offense of bank fraud and is required for federal jurisdiction. *United States v. Schultz*, 17 F.3d 723, 725 (5th Cir. 1994). It is undisputed that no evidence was introduced establishing that Bank One was a federally-insured institution. The evidence is therefore insufficient to support this conviction, and the district court was without jurisdiction as to this count. Thus, Solesbee's conviction for bank fraud is reversed.

Solesbee's arguments regarding the insufficiency of the evidence as to the other counts are unavailing. A review of the relevant portions of the indictment as well as the evidence introduced at trial relevant to each of these counts reveals that the evidence would permit a reasonable juror to find guilt beyond a reasonable doubt on each of these counts.

**4. Whether the district court erred in charging the jury on Count 8 that the underlying activity for the charged money laundering was wire fraud instead of bankruptcy fraud**

Solesbee argues that the district court constructively amended the indictment as to Count 8. A constructive amendment occurs when the trial court, through its instructions and facts it permits in evidence, allows proof of an essential element of a crime on an

21

alternative basis permitted by the statute but not charged in the indictment. *United States v. Griffin*, 324 F.3d 330, 355 (5ᵗʰ Cir. 2003) (citations omitted). As Solesbee agrees, because he did not object to the jury instructions on this basis, this issue is reviewed for plain error. *United States v. Daniels*, 252 F.3d 411, 414 (5ᵗʰ Cir. 2001). A jury charge constitutes plain error if: 1) it was erroneous; 2) the error was plain; and 3) the plain error affected the substantial rights of the defendant. *Id.* If those conditions are met, the court will exercise its discretion to correct the error only if the error "seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings." *Id.*

As explained above, the indictment charged Solesbee with money laundering, with the underlying specified unlawful activity being bankruptcy fraud. But the jury instructions changed the underlying specified unlawful activity to wire fraud, thus constructively amending the indictment. Thus, the question is whether this error rises to the level of plain error.

This court has held constructive amendments to be harmless in some circumstances. For example, in *U.S. v. Daniels*, the indictment charged Daniels with money laundering by causing the withdrawal of stolen funds from a bank account; but the court's charge would have permitted the jury to convict Daniels based on either that withdrawal or the deposit of a stolen check. 252 F.3d

22

at 413. The court refused to reverse under the plain error standard because Daniels could have been charged under either the deposit or withdrawal theory and because the two acts were so closely linked. *Id.* at 414. Thus, the court concluded that the fairness, integrity or public reputation of the judicial proceedings were not affected.

The error committed by the district court here did not affect the fairness, integrity, or public reputation of the judicial proceedings. The jury convicted Solesbee on Count 7, the bankruptcy charge that was listed in the indictment as the predicate offense for Count 8. The jury also found Solesbee guilty of money laundering; this means that the jury found that Solesbee was attempting to hide the funds in question. As the jury's convictions under Counts 7 and 8 encompass jury findings as to all the requisite elements of Count 8 as charged in the indictment, it is a certainty that the jury would have found Solesbee guilty of Count 8 as charged in the indictment. Because Solesbee was put on notice to defend the bankruptcy fraud charge and the money laundering charge as outlined in the indictment and the jury findings lead to the necessary conclusion that the jury found him guilty of all the elements of Count 8 as charged, Solesbee was not prejudiced by the constructive amendment. Thus, the constructive amendment did not affect the fairness, integrity or public reputation of the judicial proceedings, and reversal is not

23

required.

**5. Whether the district court erred by considering Solesbee's conviction as to Count 8 in sentencing because venue for Count 8 was not proper in the Northern District of Texas**

Solesbee also challenges Count 8 on the basis of improper venue. The cashier's check was drawn on an account in Florida and deposited into an account in Georgia. The funds never passed through the Northern District of Texas. Thus, the crime did not occur in the Northern District of Texas, rendering venue in the Northern District of Texas improper. *See United States v. Cabrales*, 524 U.S. 1 (1998) (concluding that proper venue for money laundering lies in the state in which the financial transactions occurred). All questions concerning venue are reviewed under an abuse of discretion standard. *United States v. Asibar*, 109 F.3d 1023, 1037 (5th Cir. 1997).

The government responds that Solesbee waived his challenge to venue by not raising it timely. Generally, objections to venue are waived if not raised before trial. *United States v. Carreon-Palacio*, 267 F.3d 381, 391 (5th Cir. 2001). There are, however, situations in which the failure to raise a challenge to venue pre-trial does not waive such a challenge. Failure to object before trial will not bar a challenge to venue when trial testimony puts venue at issue and the defendant makes a timely challenge or requests a jury instruction on venue. *Carreon-Palacio* at 392.

24

Similarly, when an indictment contains an allegation of proper venue and the defect in venue only becomes apparent during the government's case, the defendant can make a timely objection by objecting at the close of the evidence. *Id.* at 392-93. But a defendant indicted by an instrument that lacks sufficient allegations to establish venue waives any future challenge by failing to object before trial. *Id.*

Solesbee's objection to venue was not timely. The indictment stated that the offense took place in the Northern District of Texas, but from the facts of the indictment it was clear that the transaction only occurred in Florida and Georgia. Thus, the impropriety of venue was apparent from the face of the indictment and should have been raised before trial. Solesbee objected to venue for the first time at sentencing, asking the district court to disregard the loss as to the money laundering conviction because venue was improper. Thus, even under the exceptions to the general rule, Solesbee's objection would not have been timely as it was not made at the close of the evidence. Solesbee waived any challenge to venue by not making a timely objection.

**6. Whether the district court erred by ordering Solesbee to pay restitution to three persons who, Solesbee argues, were not harmed by any offense of which Solesbee was convicted**

The district court ordered Solesbee to pay $857,332.00 in restitution to a number of people and organizations. Solesbee

25

objected to the restitution order at sentencing, arguing three of the persons to be compensated under the restitution order were not named in the indictment and thus were not entitled to restitution. His objection was overruled.

18 U.S.C. § 3663(a) provides that the court may order the defendant to make restitution to any victim of the offense. Section 3663(a)(2) defines victim as:

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element of a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

Similarly, this court has already held that victims not named in the indictment may be compensated under a restitution order when those victims' losses were caused by a fraudulent scheme outlined in the indictment. *United States v. Pepper*, 51 F.3d 469, 473 (5th Cir. 1995). The legality of the district court's restitution award is reviewed *de novo*. *United States v. Hughey*, 147 F.3d 423, 436 (5th Cir. 1998).

Solesbee argues that, while there was testimony presented at trial about losses suffered by these three individuals, the losses were not caused by any conduct for which Solesbee was convicted. But a review of the facts surrounding Solesbee's defrauding of each of these three persons reveals that each of these persons is

26

properly considered a victim under section 36663(a)(2). Each of these persons was either 1) directly and proximately harmed as a result of the commission of an offense for which Solesbee was convicted or 2) directly and proximately harmed by Solesbee's conduct in the course of a scheme that was an element of an offense for which Solesbee was convicted. Thus, the district court did not err in ordering restitution for these individuals.

## 7. Whether the district court erred in using certain loss figures in analyzing the sentencing guidelines

Finally, Solesbee asserts that, in analyzing the sentencing guidelines, the district court improperly used loss figures that were not alleged in the indictment and that were not shown to be part of a common scheme or plan as the offenses for which Solesbee was convicted. Solesbee generally alleges that the losses of the 21 witnesses, whose testimony he complained of in issue number 2, did not stem from "relevant conduct," as defined in the sentencing guidelines. Unfortunately, Solesbee does not articulate any specific argument as to why each of these losses does not stem from relevant conduct. As Solesbee has not properly argued this point of error, it is deemed abandoned. *United States v. Lindell*, 881 F.2d 1313, 1325 (5th Cir. 1989).

## CONCLUSION

Solesbee's conviction for Bank Fraud under Count 11 is

27

REVERSED. Solesbee's convictions on all of the other counts are AFFIRMED, as are the restitution order and the sentence pronounced by the district court.